UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 0:22-cr-00004-DLB-EBA-1

UNITED STATES OF AMERICA,                                           PLAINTIFF,

V.                          **REPORT AND RECOMMENDATION**

ADAM CHILDERS,                                                      DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

### INTRODUCTION

This matter is before the Court on Defendant Adam Childers' Motion to Suppress. [R. 24]. On June 13, 2022, the United States filed a Response. [R. 30]. The Defendant filed a Reply to the United States' Response on June 20, 2022. [R. 33]. Thus, this matter is fully briefed and ripe for review. Having considered the motion, and being sufficiently advised, the undersigned **RECOMMENDS** for the following reasons that the Defendant's motion to suppress be **DENIED**.

### FACTS & PROCEDURAL HISTORY

In October of 2020, the Ashland Police Department ("APD") employed a software program designed to identify the IP addresses of devices suspected of sharing or downloading child sexual abuse material ("CSAM") via various peer-to-peer platforms. [R. 30 at pg. 1–2]. The software scans the hash values of files being shared or downloaded by peer-to-peer users and compares them to the hash values of previously confirmed images of CSAM. [*Id*. at pg. 2]. Hash values act similarly to a digital fingerprint that allows investigators to compare two images, if the hash values match, the images are the same. [*Id*.]. The software flags the IP address of devices that are flagged as potentially sharing or receiving CSAM. [*Id*.]. On October 19, 2020, the APD learned that the

IP address associated with the Defendant's home was flagged as downloading a large amount of known CSAM material, which was verified by the images' hash values. [*Id*.]. Subsequently, the APD discovered that a Kentucky State Police ("KSP") Detective had downloaded 19 files containing suspected child sexual abuse material from the Defendant's IP address on October 5 and October 6. [*Id*.]. After an APD review of the evidence produced by KSP found that the files contained depictions of minors engaged in sexually explicit conduct, the APD obtained a subpoena for subscriber information which revealed the IP address was associated with the Defendant's residence in Ashland, Kentucky. [*Id*.].

On October 26, 2020, a search warrant was obtained and executed at Defendant's residence. [*Id*.]. Notably, Defendant was present during the execution of the warrant and admitted that there would be pictures of "naked children" on his computer and in his residence. [*Id*.]. The search yielded a computer, multiple hard drives, discs, binders of printed images, and magazines that collectively contain thousands of images of CSAM. [*Id*. at pg. 2–3]. After the search of his residence, Defendant was indicted by a grand jury for both distributing and possessing visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2252(a)(4)(B). [R. 1]. Defendant was then arrested pursuant to an executed arrest warrant on April 6, 2022. [R. 12]. On June 6, 2022, the Defendant filed the instant motion to suppress. [R. 24]. The United States Responded. [R. 30]. The Defendant then filed a Reply to the United States Response. [R. 33].

## ANALYSIS

Defendant argues that "the [search warrant affidavit] was devoid of probable cause based on the facts cited in the Affidavit without any independent corroboration by the Affiant and stale information that was the basis of the Affidavit." [R. 24 at pg. 5]. To support this assertion, Defendant argues that the independent investigation supporting the search warrant solely consists

of an APD officer requesting the identity of the user of the IP address, which had been linked to receiving the CSAM. [R. 24 at pg. 8]. In his Reply, the Defendant elaborates that "[The APD Officer] neglected to specify how Mr. Childers accessed or downloaded child pornographic material. [R. 33 at pg. 1]. Defendant then argues that the affidavit does not indicate how or when the CSAM images were downloaded from the Defendant's IP address. [R. 24 at pg. 8]. Ultimately, Defendant concludes that "[s]tale evidence cannot form the basis for a search warrant." [*Id*.]. Defendant elaborates on this point in his Reply, where he states that "[b]ecause [the Affiant] did not include how the images were downloaded, the information should be considered stale and the warrant barebones." [R. 33 at pg. 2]. In opposition, the United States argues that the information supporting the search warrant was not stale and that there was sufficient evidence to support a finding of probable cause. [R. 30 at pg. 3].

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. U.S. CONST. amend. IV. To protect that interest, the Fourth Amendment requires that a search warrant issue only upon a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

**A. Probable Cause**

In order for probable cause for a search warrant to exist, the affidavit in support of the search warrant must establish a "nexus between the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336–37. The Sixth Circuit has held that probable cause to believe a person committed a crime does not justify a search of his or her residence absent some independent evidence linking the residence to the crime. *See United States v. Savoca* 762, F.2d 292, 297 (6th Cir. 1985). However, the Sixth Circuit has also held that a nexus exists when law enforcement connects the IP address used to access a website to the physical location identified in the warrant. *United States v. Elbe*, 774 F.3d 885, 889–90 (6th Cir. 2014); *United States* v.

*Kinison*, 710 F. 3d 678, 683–85 (6th Cir. 2013). Here, that is exactly the case. The officers identified the Defendant's IP address and connected it to his house. [R. 30-1 at pg. 1]. Accordingly, there was a sufficient nexus between the place to be searched and the evidence sought. Thus, the Defendant's arguments that there was not sufficient probable cause are without merit.

**B. Staleness**

In the matter at hand, Mr. Childers contends that the information contained in the affidavit was stale. [R. 24 at pg. 5]. An affidavit supporting a search warrant must contain "facts so closely related to the time of the issuance of the warrant as to justify a finding of probable case at that time." *Sgro v. United States*, 287 U.S. 206, 210 (1932). "Once the incriminating information contained in an affidavit for a search warrant becomes too old, or 'stale,' such information may not be used in the determination of probable cause." *United States v. Hampton*, No. 3:10-CR-39-C, 2010 U.S. Dist. LEXIS 112970, at *13–14 (W.D. Ky. Sep. 10, 2010) (citing *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009)).

At the outset, the Court notes that, in Defendant's motion to suppress, the Defendant makes no argument why the information found in the search warrant affidavit is stale beyond conclusorily stating that "stale information . . . was the basis of the affidavit." [*Id*.] However, Defendant attempts to buttress his argument in his Reply stating, "[b]ecause Sergeant Daniels did not include how the images were downloaded, the information should be considered stale and the warrant barebones." [R. 33 at pg. 2].

"Whether the information contained in a search warrant affidavit has become stale requires more than solely 'counting the days on a calendar . . .'" *United States v. Spikes*, 158 F.3d 913, 923–24 (6th Cir. 1998). The Sixth Circuit has outlined four factors to consider when analyzing staleness:

   1. "the character of the crime (chance encounter in the night or regenerating

       conspiracy?)"
2. "the criminal (nomadic or entrenched?)"
3. "the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)"
4. "the place to be searched (mere criminal forum of convenience or secure operational base?)."

*United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006) (quoting *Andresen v. State*, 24 Md. App. 128, 331 A.2d 78, 106 (Md. Ct. Spec. App. 1975)). The Court will address each factor in turn.

    **i. The Character of the Crime**

The first factor considers whether the crime at issue is a one-time occurrence or part of ongoing criminal activity. The Sixth Circuit has recognized that information suggesting "ongoing criminal activity" is more durable than information of discreet offenses. *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). Further, the Sixth Circuit has held that "child pornography is not a fleeting crime . . . because the crime of child pornography is generally carried out in the secrecy of the home and over long period, the same limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (citing *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) (internal quotations omitted). Here, the affidavit indicated that the Defendant's IP address had been flagged for downloading images and videos containing child pornography by means of a peer-to-peer file sharing program on October 19, 2020. [R. 30-1 at pg. 2]. Further, the affidavit indicated that the Kentucky State Police also received numerous files containing child pornography through a separate peer-to-peer investigation which took place between October 5 and 6 of 2020. [*Id*.]. As the warrant affidavit alleged that Defendant had downloaded child pornography on at least two separate occasions; and, given the Sixth Circuit's presumption that evidence relating to child pornography is not fleeting, this factor weighs against a finding a

staleness.

### ii. The Criminal

The search warrant affidavit clearly established that the defendant was not nomadic, as the warrant only sought for permission to search the Defendant's car, home, and person. [R. 30-1 at pg. 1]. Accordingly, the Court finds that the Defendant was entrenched as the alleged crimes seemed to have only occurred in  Thus, this factor weighs against a finding of staleness.

### iii. The Thing to be Seized

The Sixth Circuit has held that "unlike cases involving narcotics that are bought, sold, or used, digital images of child pornography can be easily duplicated and kept indefinitely even if they are sold or traded. In short, images of child pornography can have an infinite life span." *United States v. Frechette*, 583 F.3d at pg. 379. Thus, this factor weights against a finding of staleness.

### iv. The Place to be Searched

The search warrant affidavit requested the search of the Defendant's home and car. The allegations that defendant possessed child pornography are centered around images downloaded from a single IP address belonging to a computer owned by the Defendant and located at the Defendant's home. *See United States v. Paull*, 551 F.3d at 522 (holding that the crime of possession of child pornography "is generally carried out in the secrecy of the home and over a long period"). Accordingly, the Defendant's home is not a mere criminal forum of convenience, but rather a location at the heart of the criminal charge. Accordingly, this factor weighs against a finding of staleness. Taken together, all four *Abboud* factors weigh against a finding of staleness. Accordingly, the Court finds that the information presented in the search warrant affidavit was not stale.

### C. *Leon* Good Faith Exception

The Defendant argues that the search warrant affidavit lacked indicia of probable cause

and therefore the *Leon* good-faith exception should not apply. [R. 33 at pg. 3]. In general, the exclusionary rule and the fruit of the poisonous tree doctrine serve to exclude all evidence seized as a result of a defective warrant. However, in *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that "the exclusionary rule should not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated. *Leon*, 468 U.S. at 918–21. There are four instances in which *Leon* does not apply: "(1) the magistrate was 'mislead by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth[;]' (2) the magistrate 'abandoned his judicial role' or neutrality; (3) the warrant was 'so lacking in indicia for probable cause' as to render official belief in its existence unreasonable; or (4) the warrant was so 'facially deficient' that it could not reasonably be presumed valid." *United States v. McClain*, 444 F.3d 556, 564 (6th Cir. 2005) (quoting *Leon*, U.S. at 923).

Here, the Defendant solely argues that "[t]he affidavit lacked clear indicia for probable cause . . . and any evidence obtained [from the search] should be suppressed[.]" [R. 33 at pg. 3]. Accordingly, the other instances where *Leon* does not apply will not be discussed. Specifically. Defendant argues that the sole information in the affidavit linking the Defendant to the alleged crime is that a peer-to-peer platform was used and that this is too vague to support a finding of probable cause and therefore rendering the warrant 'bare-bones'. [R. 33 at pg. 2].

"An affidavit lacks the requisite indicia of probable cause if it is a 'bare-bones' affidavit. *Leon*, 468 U.S. at 923. "The inquiry into whether an affidavit is so bare-bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether an affidavit provides a substantial basis for the magistrate's conclusion of probable cause." *Id*. "The bare-bones inquiry requires the examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and that go beyond

bare conclusions and suppositions." *Id*. Further, assertions that a warrant is bare-bones "can be overcome with a 'modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched.'" *Duncan*, 2012 WL 3042945 at *8.

Here, the affidavit describes more than one instance in which child pornography had been detected from an IP address directly associated with the Defendant's residence. [R. 30-1 at pg. 1]. This is sufficient enough to allow law enforcement to believe that the finding of probable cause was supported. Accordingly, there was an indicia of probable cause and the warrant was not so bare-bones to support a finding that the *Leon* good faith exception would not apply. .

## CONCLUSION

Altogether, the Defendant has not shown that the warrant affidavit was lacking the requirements for a finding of probable cause; nor has the Defendant demonstrated that the evidence leading to the finding of probable cause are stale. Further, the Defendant has failed to show the the *Leon* good faith exception should not apply. For those reasons, the undersigned **RECOMMENDS** that the Defendant's motion to suppress be **DENIED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's

objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Signed August 11, 2022.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge